# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No. 13-cv-02344-WJM-MJW

FEDERAL DEPOSIT INSURANCE
CORPORATION, as RECEIVER OF NEW
FRONTIER BANK, GREELEY, COLORADO,

       Plaintiff,

  v.

KANSAS BANKERS SURETY COMPANY,
a Kansas corporation,

       Defendant.

---

## ORDER APPROVING
## AGREED PROTOCOL REGARDING PLAINTIFF'S PRODUCTION
## OF NEW FRONTIER BANK DOCUMENTS

( Docket no. 31-1 )

---

{1198424;}

## TABLE OF CONTENTS

Introduction ........................................................................................................... 1

I.    General Provisions ........................................................................................ 2

    1.    Scope. ................................................................................................. 2

    2.    Reservations. ..................................................................................... 2

    3.    Application of Protective Order. ..................................................... 3

    4.    Further Collaboration, Dispute Resolution. ................................. 3

II.   Definitions ..................................................................................................... 3

III.  Search and Production of NFB Documents ............................................. 5

    1.    Scope of NFB Documents to Be Searched ................................... 5

    2.    Reservations of Rights Regarding Scope of NFB Documents to
          Be Searched. ...................................................................................... 5

    3.    Search Methodology. ........................................................................ 6

         (a)   Searches Limited to Relevant Period. .................................. 6

         (b)   Development of Final Search Terms. ................................... 6

    4.    KBS Review of Identified Documents. ........................................... 7

    5.    Optional FDIC Screening, Non-Waiver of Privileges. ................ 7

    6.    FDIC Production. .............................................................................. 7

    7.    Statement Regarding Cost-Sharing. ............................................... 8

IV.   Production Format ...................................................................................... 8

V.    Management of NFB Documents Subject to an FDIC Claim ................ 9

    1.    Privilege Logging Protocol. ............................................................. 9

    2.    KBS Challenges to Asserted Privilege or Protection of NFB
          Documents. ....................................................................................... 10

    3.    Non-Waiver. .................................................................................... 10

    4.    Claw-Back Procedures. .................................................................. 10

         (a) Time for Asserting Privilege or Protection. .......................... 11

         (b) Handling Documents Subject to a Claw-Back Request. ......... 11

EXHIBIT A ........................................................................................................ 1

EXHIBIT B ........................................................................................................ 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 13-cv-02344-WJM-MJW

FEDERAL DEPOSIT INSURANCE
CORPORATION, as RECEIVER OF NEW
FRONTIER BANK, GREELEY, COLORADO,

        Plaintiff,

    v.

KANSAS BANKERS SURETY COMPANY,
a Kansas corporation,

        Defendant.

---

## ORDER APPROVING
## AGREED PROTOCOL REGARDING PLAINTIFF'S PRODUCTION
## OF NEW FRONTIER BANK DOCUMENTS [ Docket No. 31]

---

### Introduction

On April 10, 2009, New Frontier Bank of Greeley, Colorado ("NFB" or "Bank") was closed by the Colorado State Bank Commissioner, and the Federal Deposit Insurance Corporation ("FDIC") was appointed Receiver of the Bank pursuant to 12 U.S.C. §1821(c).

As used herein, "FDIC" or "Plaintiff" means FDIC is its capacity as Receiver of NFB, and "KBS" or "Defendant" means Kansas Bankers Surety Company. FDIC and KBS are collectively referred to as the "Parties."

Counsel for FDIC and KBS have met and conferred regarding the identification and production of discoverable paper documents and electronically stored information

("ESI"), formerly in the possession of NFB and currently in FDIC's possession. Pursuant to Fed. R. Civ. P. 26 and Fed. R. Evid. 502, FDIC and KBS, by and through their respective counsel in this action, have stipulated and agreed that the following discovery protocol (the "Protocol") should govern KBS's discovery, and FDIC's production, of the "NFB Documents" (as defined in Section II of this Protocol), and have jointly moved the Court to approve this Protocol (Dkt. #31).

For good cause shown, that joint motion is HEREBY GRANTED, and the Court ORDERS that this Protocol shall govern KBS's discovery and FDIC's production of the NFB Documents.

## I.
### General Provisions

1.    <u>Scope</u>. This Protocol governs the discovery and production of the NFB Documents as defined in Section II, and applies to the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, and/or 37. This Protocol does not govern the discovery or production of any other information in the possession of a Party or any non-party.

2.    <u>Reservations</u>. Each of the Parties to this Protocol reserves the right to seek the modification, amendment or supplementation or this Protocol for good cause, and to seek the Court's future approval of other protocols to govern the discovery and production of information other than the NFB Documents. The Court retains jurisdiction to modify, amend, supplement or withdraw this Protocol on motion of either Party or *sua sponte*.

3.  Application of Protective Order. All information produced or discovered pursuant to this Protocol shall be subject to the Protective Order entered November 4, 2013 (Dkt. #29), which shall remain in full force and effect.

4.  Further Collaboration, Dispute Resolution. The Parties understand that administration and implementation of this Protocol will necessarily involve further communication and collaboration between them, with respect to various matters. If and to the extent any disagreements or disputes arise with respect to any aspect of this Protocol or its administration or implementation, the Parties will meet and confer in a good faith attempt to resolve the issues promptly. However, if the Parties are unable to agree upon the resolution of any such issue, either Party may file a motion with the Court to resolve the same.

## II.
## Definitions

In this Protocol, the following terms have the following meanings:

1.  "**Database**" means any active structured collection of ESI that uses a program, system, or application to store, access, search, process and/or retrieve information to serve a specific operational task or purpose and for which the ability to routinely alter, modify, or otherwise change the information, program, system, and/or application is integral to its purpose.

2.  "**Metadata**" means i) information embedded in a Native File, including but not limited to the information identified in Exhibit B hereto, that is not ordinarily viewable or printable from the application that generated, edited, or modified such

Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

3.     **"Native File(s)"** means ESI in the electronic format of the software application in which such ESI is normally created, viewed, and/or modified. Native Files are a subset of ESI. Native Files include, but are not limited to, the files identified in Exhibit A.

4.     **"NFB Documents"** means the ESI and paper documents which FDIC collected from NFB and maintains in a Data Management Services ("DMS") central repository, in data sets listed in the attached Exhibit A. The paper documents which FDIC collected from NFB have been scanned and optically character read ("OCR'd") at FDIC's expense.

5.     **"Relevant Period"** means the period from January 1, 2001 to and including April 10, 2009.

6.     **"Searchable NFB ESI"** and **"Searchable NFB Scanned Documents"** are defined in Section III(1) below.

7.     **"Static Image(s)"** means a representation of ESI produced by converting a Native File, including but not limited to the types of files identified in Exhibit B, into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement of the Parties or order of Court, a Static Image, when provided, should be provided in 300 dpi resolution, single-page black and white

CCITT Group IV Tagged Image File Format (TIFF or .TIF files). If a TIFF or .TIF file cannot be created, then the Static Image should be provided in Portable Document Format (PDF).

## III.
### Search and Production of NFB Documents

1.  Scope of NFB Documents to Be Searched. In connection with this Protocol, FDIC has provided to KBS (a) information identifying the custodians of the ESI referenced in data sets 14-18 in Exhibit A and (b) an inventory of the scanned documents included in data set 59 (the "Scanned Documents Inventory"). KBS and FDIC have agreed upon (a) a list of the NFB custodians whose ESI is to be electronically searched, within data sets 14-18 in Exhibit A, for possible production (hereafter, the "Searchable NFB ESI"), and (b) a list of the boxes of documents appearing on the Scanned Documents Inventory that are to be electronically searched, within data set 59 in Exhibit A, for possible production (hereafter, the "Searchable NFB Scanned Documents"). Nothing prohibits KBS from reasonably requesting searches from within any other data sets, custodians or inventory as needed; and nothing prohibits the FDIC from reasonably objecting to such searches

2.  Reservations of Rights Regarding Scope of NFB Documents to Be Searched. The Searchable NFB ESI and the Searchable NFB Scanned Documents are currently expected to be the principal sources of discoverable NFB Documents relating to this action. At its option, however, FDIC may, but will not be required to, search outside or beyond the Searchable NFB ESI and the Searchable NFB Scanned Documents, for

information responsive to KBS's requests. KBS reserves the right reasonably to request that the scope of Searchable NFB ESI and/or Searchable NFB Scanned Documents be expanded, and FDIC reserves the right to object to any such expansion of scope.

3.   Search Methodology. The following methodology will apply to FDIC's electronic searches of Searchable NFB ESI and Searchable NFB Scanned Documents:

(a)   *Searches Limited to Relevant Period.* Searches will seek to identify responsive NFB Documents created or generated during the Relevant Period, unless and except to the extent the Parties mutually agree otherwise.

(b)   *Development of Final Search Terms.* As soon as practicable after approval of this Protocol by the Court, KBS will provide to FDIC a good faith, initial set of search terms to be run across the Searchable NFB ESI and the Searchable NFB Scanned Documents. FDIC will identify the approximate amount of data returned from those searches and provide to KBS search term hit reports that identify the approximate number of documents returned within each searched data set for each specified search term. The Parties will engage in an iterative process, in good faith, to refine search terms as necessary to eliminate irrelevant or needlessly duplicative results; this process shall be completed by December 31, 2013. After the Parties have agreed upon a final set of search terms, FDIC will run them against the Searchable NFB ESI and the Searchable NFB Scanned Documents.

4. <u>KBS Review of Identified Documents</u>. As soon as practicable after the identification of responsive documents through the process described above, FDIC will make such documents available for review by KBS in an online Relativity database ("Relativity Database").

5. <u>Optional FDIC Screening, Non-Waiver of Privileges</u>. FDIC may, but need not, perform an initial screen of the documents identified through the process described above, for responsiveness to KBS's requests, privilege, or relevance to the case, before making the documents available in the Relativity Database for KBS's review. FDIC will not be deemed to have waived any privilege by not conducting a privilege review before making documents available in the Relativity Database for KBS's review. However, if FDIC elects to perform an initial screen, FDIC will inform KBS whether FDIC has withheld any documents from KBS's review, and if so, FDIC will comply with the privilege logging protocol set forth in Section V.

6. <u>FDIC Production</u>. KBS will review the documents made available for its review in the Relativity Database and will notify FDIC which documents it wants FDIC to produce to KBS.[1] When notified of the documents KBS desires to have produced to

---

[1] Generally, during this review by KBS, documents cannot be printed or downloaded. However, on a limited basis, as a result of (i) HTML rendering limitations of a document within Relativity, (ii) a corrupt file, or (iii) a file's being too large to view within Relativity, KBS's counsel may ask the FDIC's vendor hosting the Relativity Database to provide to KBS's counsel a copy of the selected document or documents in pdf format, to facilitate their review and communications with KBS, but at the end of KBS's review, all documents so provided and all copies thereof shall not be used in any way whatsoever, and are deemed confidential per the Protective Order in this action; providing such

KBS, FDIC may, but need not, perform a screen of the documents for responsiveness to KBS's requests, privilege, or relevance to the case, before producing the documents, and may withhold documents that are privileged or otherwise protected from discovery. FDIC will not be deemed to have waived any privilege by not conducting a privilege review before producing the documents. If and to the extent FDIC withholds any documents, FDIC will comply with the privilege logging protocol set forth in Section V. With respect to all documents not subject to an FDIC claim of privilege or protection from discovery, FDIC will process and produce such documents to KBS in accordance with the procedures set forth in Section IV of this Protocol. FDIC will, as practicable, produce documents on a rolling basis and as soon as practicable.

7.     _Statement Regarding Cost-Sharing_. The parties have discussed and not reached agreement regarding cost-sharing, if any, with respect to the documents to be provided pursuant to this Protocol. Nothing in this Protocol shall preclude FDIC from seeking cost-sharing, or preclude KBS from asserting that cost-sharing is not appropriate.

## IV.
### Production Format

1.     FDIC will produce all responsive, non-privileged NFB Documents in accordance with the specifications provided in Exhibit B attached hereto, unless the Parties otherwise mutually agree to a different format.

---

documents shall be subject to Section V of this Protocol and shall not waive any privilege or protection from compelled disclosure. Any such requests by KBS shall remain confidential between KBS's counsel and the vendor and shall not be disclosed to FDIC or its counsel.

{1198424;}                                    8

2.      Nothing contained herein shall require the FDIC to re-process any NFB ESI or re-scan any NFB Scanned Documents. To the extent the FDIC provides any fields of information or metadata beyond that contained in Exhibit B attached hereto, the FDIC may rely solely on its previous processing of the data, in its "as is" condition, and as used by the FDIC for purposes of this action.

**V.**

**Management of NFB Documents Subject to an FDIC Claim
of Privilege or Protection from Discovery**

1.      <u>Privilege Logging Protocol</u>. For any and all NFB Documents for which FDIC claims a privilege or other protection from discovery, FDIC shall provide:

(a)      a listing of each such NFB Document, which listing includes (a) an indication of the privilege(s) and/or protection(s) claimed, and (b) as much objective metadata as is reasonably available (e.g., file name, file type, document control number, date, author(s), recipient(s), etc.), it being understood that "objective metadata" does not include any substantive content from, or any manually-generated subjective description of, the NFB Document being withheld; or

(b)      a description, by general category, of any NFB Documents that FDIC asserts are privileged or protected from discovery but, for reasons specified, would be needlessly time-consuming or expensive to list individually. Any disagreement arising from FDIC's election to invoke this provision shall be subject to the dispute resolution procedures set forth in the following paragraph.

2.    <u>KBS Challenges to Asserted Privilege or Protection of NFB Documents.</u> If KBS challenges an FDIC assertion of privilege or protection from discovery with respect to any NFB Documents, the Parties shall meet and confer and make a good faith effort to cooperatively classify the challenged NFB Documents into categories that are subject to common factual and legal issues insofar as practicable. Thereafter, the Parties shall jointly request a conference with the Court to devise a plan for resolving the challenges, which normally will include: (a) a schedule for briefing the legal issues relevant to each category; (b) a ruling date for issues that can be resolved on the briefs alone; (c) a schedule for providing representative samples for the Court's *in camera* review with respect to any categories that cannot be resolved on the briefs; (d) a schedule for the Parties to meet and confer to attempt in good faith to apply the Court's rulings on the samples to whole categories or within categories insofar as possible; and (e) a schedule for repeating this process as needed.

3.    <u>Non-Waiver.</u> Pursuant to Fed. R. Evid. 502(d), no applicable attorney-client privilege, attorney work product protection, or any other applicable privilege or ground for withholding production is waived by FDIC providing documents for KBS review, producing documents to KBS, or disclosing information to KBS in accordance with this Protocol, and FDIC shall not be required to meet the requirements of Fed. R. Evid. 502(b)(1)-(3).

4.    <u>Claw-Back Procedures.</u> The following procedures shall apply to FDIC's claw-back of any NFB Documents for which FDIC asserts a privilege or protection from discovery.

{1198424;}                    10

(a) *Time for Asserting Privilege or Protection.* At any time, FDIC may assert privilege or protection over produced NFB Documents by notifying KBS in writing of the assertion of privilege or protection and FDIC's request for claw-back, except that: (1) affirmative use of such NFB Document by FDIC in the action waives privilege and protection with respect to it, and with respect to other NFB Documents if and to the extent provided by Fed. R. Evid. 502(a); and (2) upon KBS's use of such NFB Document in the case, FDIC must promptly assert any claimed privilege and/or protection over it and request return or destruction thereof.

(b) *Handling Documents Subject to a Claw-Back Request.* Upon receipt of any such FDIC notice and claw-back request, KBS shall: (1) to whatever extent it contests the assertion of privilege or protection, promptly so notify FDIC, and maintain the contested NFB Document in confidence pending resolution of the contest by the Court; and (2) to whatever extent it does not contest the assertion of privilege or protection, promptly certify in writing to FDIC that KBS has returned or destroyed the applicable NFB Document and made reasonably diligent efforts to identify and destroy each copy thereof and all information derived therefrom (normally, reasonable diligence will not include deletion from disaster recovery media).

IT IS SO ORDERED THIS 12TH DAY OF November , 2013.

MICHAEL J. WATANABE
United States Magistrate Judge

12

**EXHIBIT A**
**NEW FRONTIER BANK DMS DATA SETS**

1.   NF 10050 - New Frontier Bank - Loan Payments View

2.   NF 10050 - New Frontier Bank - Loan Profile View

3.   NF 10050 - New Frontier Bank - Loan Status View

4.   NF ADP Employee Accumulator

5.   NF ADP Employee Master

6.   NF ADP Employee Payroll Pay stubs

7.   NF BH React Customer

8.   NF BH React Customer Financial Statements

9.   NF BH React Loan Collateral

10.  NF BH React Loan Exception

11.  NF BH React Products

12.  NF BH React Related Customer

13.  NF CLX Reports of Sold Loans Since 2004

14.  NF E-Docs

15.  NF Email Database

16.  NF Fileshare

17.  NF Forensic Data

18.  NF Forensic Email Database

19.  NF Genesis Loan Sale Data

20.  NF Interim Servicing Data

21. NF IPS Shareholder Reports

22. NF Jack Henry 4Sight Check Images Metadata

23. NF Jack Henry 4Sight Statements

24. NF Jack Henry PinPoint Reports

25. NF JH ACH Transaction Details

26. NF JH AP Master

27. NF JH AP Transaction History

28. NF JH CD Master

29. NF JH CD Transaction History

30. NF JH CIF AP Master

31. NF JH CIF AP Transaction History

32. NF JH CIF CD Master

33. NF JH CIF CD Transaction History

34. NF JH CIF Customer Master

35. NF JH CIF DDA Master

36. NF JH CIF GL Balance Sheet Reports

37. NF JH CIF GL Master

38. NF JH CIF GL Transaction History

39. NF JH CIF Loan Master Additional Information

40. NF JH CIF Loan Mortgage Additional Information

41. NF JH CIF Loan Property Details

42. NF JH CIF Loan Summary

43.   NF JH CIF Loan Transaction History

44.   NF JH CIF Safety Deposits Master

45.   NF JH Customer Master

46.   NF JH DDA Master

47.   NF JH DDA Transaction History

48.   NF JH GL Balance Sheet Pinpoint Reports

49.   NF JH GL Master

50.   NF JH GL Transaction History

51.   NF JH Loan Master Additional Information

52.   NF JH Loan Mortgage Addtl Info

53.   NF JH Loan Property Details

54.   NF JH Loan Summary

55.   NF JH Loan Transaction History

56.   NF JH Safety Deposits Master

57.   NF JH Safety Deposits Transaction History

58.   NF JH Wire Transaction Details

59.   NF Scanned Documents

# EXHIBIT B
# PRODUCTION FORMAT

## Form of Production for Email

All electronic email from Windows-Based ESI ("WESI") shall be produced in Native Format, , complete with full text extracts and the following fields of Metadata in a load file, to the extent the Metadata is available:

1.   From (Name)

2.   Author Meta (Last editor of attachment/e-doc)

3.   Bates Begin

4.   Bates End

5.   Bates Attach Begin

6.   Bates Attach End

7.   BCC

8.   CC

9.   Sent To

10.  COMPPATH (Complete Filename and path)

11.  Custodian (Natural person or device in possession of the record at the time of collection)

11.  Group_Custodian (Name(s) of custodian(s) with exact copy of file before de-duplication)

12.  Relativity ID (Unique Relativity identifier – Document Control Number)

13.  Group Identifier (Full range of Relativity records between beginning parent document and ending child document)

14.  Document Type (Field in Relativity describing the family relationship (parent or attachment) of a record

15.  Extracted Text (Text of e-mails, nested e-mail body, or raw text from images, edocs, or attachments)

16.  MD5 Hash

17.  Application (Program commonly used to access the record)

18.  Subject (e-mail subject line)

19.  Title Meta (Title of attachment/standalone edoc metadata)

20.  Sent Date (Date e-mail was sent from sender)

21.  Sent Time (Time e-mail was sent from sender)

22.   Last Modified Date (Full date edoc was modified before saving/sending)

Electronic mail shall be produced along with attachments to the extent the message and/or any attachment is responsive, relevant and not privileged. As a general matter, subject to specific review, a message and its attachments(s) shall not be withheld from production based on the fact that one or more attachments are privileged, irrelevant, or non-responsive. To the extent the message and/or one or more attachments is privileged or non-responsive, the responsive, non-privileged documents shall be produced along with placeholders indicating whether the accompanying record was withheld as non-responsive or privileged. All Parties should confirm that their ESI is Windows-based or, if not, identify the other forms of ESI within their possession, custody and control.

**Form of Production for Other WESI**

All other WESI (including attachments to electronic mail) shall be produced in Native format full text extracts and the following fields of Metadata in a load file, to the extent the Metadata is available:

1.   Author Meta (Last editor of attachment/e-doc)

2.   Bates Begin

3.   Bates End

4.   Bates Attach Begin

5.   Bates Attach End

6.   COMPPATH (Complete Filename and path)

7.   Custodian (Natural person or device in possession of the record at the time of collection)

8.   Group_Custodian (Name(s) of custodian(s) with exact copy of file before de-duplication)

9.   Relativity ID (Unique Relativity identifier – Document Control Number)

10.   Group Identifier (Full range of Relativity records between beginning parent document and ending child document)

11.   Document Type (Field in Relativity describing the family relationship (parent or attachment) of a record

12.   Extracted Text (Text of e-mails, nested e-mail body, or raw text from images, edocs, or attachments)

13.   MD5 Hash

14.   Application (Program commonly used to access the record)

15.   Title Meta (Title of attachment/standalone edoc metadata)

16.   Created Date (Contains the date the edoc was created)

17.   Created Time (Contains the time the edoc was created)

18.   Last Modified Date (Full date the edoc was modified before saving/sending)

## Native Production

Generally, all WESI, including emails and non-email documents, shall be produced by the Parties as Native Files in Load Files. Exceptions may include documents imaged for redaction purposes prior to release for review and production, or documents scanned by the FDIC-R after being named receiver for New Frontier Bank. Each WESI Native File produced will have a unique Relativity ID generated and included within the production as a separate metadata field within the Data ("DAT") or Document Image Information ("DII") Load File. The Relativity ID shall be the default unique document identification number. The Parties agree that the first Party to present a Native File or an image of a Native File as an exhibit (deposition, trial, etc.), as an attachment to a pleading, or otherwise enter the image of the Native File for the first time into evidence, shall convert the Native File to a Static Image (e.g., TIFF or PDF), Bates-number the Static Image with the default unique Relativity ID, and provide a copy of the Native File to the other side's counsel prior to using the Native File. Each Static Image page shall be branded consecutively with the Native File Relativity ID plus a suffix consisting of a dash and number for each page comprising the entire imaged document (i.e., "Native Relativity ID"-001, "Native Relativity ID"-002, etc.).

## Load Files[2]

All WESI shall be produced along with an IPRO, Opticon, or Summation DII load file indicating Bates numbers and document breaks as applicable. Metadata shall be produced in Concordance DAT file format, DII format, and summary text file for Summation, or XML format, and extracted full text shall be provided in TXT file format at the document level. Non-Windows-Based Applications and Data shall be subject to the same production requirements to the extent technically and legally feasible.

## Duplicates

To avoid the production of more than one copy of a particular unique item, the Parties shall use industry standard MD5 (or SHA-1) hash values within (1) all emails identified for production, and (2) all loose electronic files identified for production. The Parties will not de-duplicate attachments to emails against loose electronic files. The Parties shall

---

[2] A litigation support "load file," as that term is used herein, refers to the file necessary to reference images of documents and corresponding load file data into a reviewable database. A load file can, for example, specify what individual pages belong together as a document, what attachments are included with a document, where a document begins and ends, and what metadata is associated with a document.

also produce a field listing all custodians of any de-duplicated copies of an email or other electronic document.

**Other Methods to Streamline Discovery**

The Parties agree to meet and confer in good faith about any other technology or process that a producing party proposes to use to streamline the culling, review and production of ESI (e.g., email threading, near de-duplication, technology assisted review). The Parties shall make reasonable good faith efforts to resolve any objections to the use of such technology or process before seeking relief from the Court.

**Production Media**

Documents shall be produced on external hard drives or readily accessible computer or electronic media, e.g., CDs, DVDs, or flash or thumb drives ("Production Media"). All Production Media should have the following five directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; (4) NATIVES for any native Excel files or Exception Documents; and (5) Load Files. The Production Media shall identify: (a) the producing Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

**Color**

Where the original of a produced document is in color, and color is material to the interpretation of the document, the receiving party may request that the document be produced in color (whether electronic or paper). Otherwise, production will be in 300 dpi resolution, single-page black and white CCITT Group IV Tagged Image File Format.