IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 13-cv-2344-WJM-MJW

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of New Frontier
Bank, Greeley, Colorado,

 Plaintiff,

v.

KANSAS BANKERS SURETY COMPANY,

 Defendant.

---

## ORDER DENYING MOTION FOR RECONSIDERATION

---

Before the Court is the FDIC's Motion for Reconsideration of Order Granting

Defendant's Motion for Summary Judgment ("Motion for Reconsideration"). (ECF No.

106.) The Court will refer to the summary judgment order in question (ECF No. 103) as

the "Order." For the reasons explained below, the FDIC's Motion for Reconsideration is

denied.

## I. LEGAL STANDARD

Although the FDIC cites no specific authority for reconsideration, the Court notes

that the FDIC brought its motion less than 28 days from entry of judgment. (*Compare*

ECF No. 104 *with* ECF No. 106.) The Court therefore presumes that the FDIC moves

under Federal Rule of Civil Procedure 59(e), which permits the Court to "alter or amend

a judgment" if a motion is filed "no later than 28 days after the entry of the judgment."

"Rule [59(e)] was adopted to make clear that the district court possesses the

power to rectify its own mistakes in the period immediately following the entry of

judgment." *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982) (internal

quotation marks omitted).   Accordingly, the Court may amend the judgment in its

discretion where there has been an intervening change in the controlling law, new

evidence that was previously unavailable has come to light, or the Court sees a need to

correct clear error or prevent manifest injustice.  *Servants of Paraclete v. Does*, 204

F.3d 1005, 1012 (10th Cir. 2000).  "A motion for reconsideration is appropriate where

the court has misapprehended the facts, a party's position, or the controlling law."  *Id*.

However, motions to alter or amend the judgment pursuant to Rule 59(e) "are regarded

with disfavor. . . [and are] 'not appropriate to revisit issues already addressed or

advance arguments that could have been raised in prior briefing.'"  *Kerber v. Qwest*

*Group Life Ins. Plan*, 727 F. Supp. 2d 1076, 1076 (D. Colo. 2010) (quoting *Servants of*

*the Paraclete*, 204 F.3d at 1012).

## II.  ANALYSIS

The Court presumes familiarity with the facts set forth in the Order.  (ECF No.

103 at 3–11.)

The Bond's Condition 14 terminates upon FDIC takeover and prohibits the FDIC

from thereafter "mak[ing] any claim against [KBS], unless a Proof of Loss, duly sworn

to, with full particulars and complete documentation has been received by [KBS] prior to

the termination or cancellation of this bond."  (ECF No. 1-1 at 15.)  As described in the

Order, the only documents even purporting to meet this standard are the following

documents sent from the Bank to KBS in the run-up to the FDIC's takeover:

- a cursory letter from the Bank's attorney announcing "a potential claim"

and attaching a threatening letter from Johnson Dairy's attorney;

- another cursory letter from the Bank's attorney attaching the Adversary Proceeding complaint;

- a slightly longer letter from the Bank's attorney briefly summarizing the Adversary Proceeding complaint, denying the wrongdoing alleged therein, and again attaching the Adversary Proceeding complaint;

- an even longer letter from the Bank's attorney summarizing the Adversary Proceeding complaint, accompanied by two boxes of documents comprising Johnson Dairy's credit file and related information in the Bank's possession, although the Bank's attorney admitted he lacked personal knowledge concerning those documents or the allegations made in the Adversary Proceeding complaint; and

- one additional letter from one of the Bank's non-attorney employees, claiming to enclose the transcript of a supposedly important deposition, although the employee did not actually enclose that transcript.

(ECF No. 103 at 4–10.)

In its summary judgment response brief, the FDIC argued from expert testimony that the foregoing communications satisfied the Bank's obligations under Condition 14. (ECF No. 86 at 41–45; *see also* ECF No. 103 at 15.)[1]  A few pages later, the FDIC advanced essentially the same argument but without relying on expert testimony, describing how the Bank "was trying to be as forthcoming as possible."  (ECF No. 86 at

---

[1] All ECF page citations are to the page number in the ECF header, which does not always match the page number inserted by the filer's word processing program.

49 (internal quotation marks omitted).)  The FDIC asserted that "[a] jury could

reasonably conclude that the Bank's pre-termination proof of loss was adequate for a

host of reasons," including, among others, that:

- "the Bond does not define or explain 'proof of loss,' 'full particulars,' or 'complete documentation'";

- "KBS provides no proof of loss form to guide an insured"; and

- "the Bank's proof of loss furnished all information reasonably available at the time."

(*Id*. at 50.)

    None of the foregoing arguments seek to fit the Bank's purported proof of loss

into the Bond's actual language: "a Proof of Loss, duly sworn to, with full particulars and

complete documentation" ("Proof of Loss clause").  Accordingly, the Court noted that

> the FDIC does not claim that any of the materials the Bank
> submitted prior to the FDIC's takeover constituted a "Proof
> of Loss, duly sworn to, with full particulars and complete
> documentation."  Rather, the FDIC argues that this proof-of-
> loss requirement was excused for at least three reasons:
> (1) the Bank had timely discovered and given notice of a
> potential claim, which is all that was really required . . . .

(ECF No. 103 at 14.)

    In its Motion for Reconsideration, the FDIC insists that this statement displays

the Court's misunderstanding: "The [FDIC] ***does*** claim that the Bank's proof of loss

submissions satisfied the Bond's proof of loss requirements."  (ECF No. 106 at 2

(emphasis in original).)  There has been no misunderstanding.  The Court understood

then, and understands now, that the FDIC believes the Bank satisfied its obligations

under the Bond before FDIC takeover.  But the FDIC still does not claim that the Bank's

4

pre-takeover communications satisfy the actual language of the Bond: "Proof of Loss, duly sworn to, with full particulars and complete documentation."  Thus, the Court's above-quoted reasoning is correct: the FDIC seeks a ruling that the Proof of Loss clause can be satisfied with something less than "full particulars and complete documentation."  For the reasons explained in the Order, the Court rejected this position.  (ECF No. 103 at 15.)  For the FDIC's benefit, however, the Court will elaborate on its reasoning.

In summary judgment proceedings, no party argued to this Court that the Proof of Loss clause is ambiguous.  To be sure, the FDIC argued that terms like "full particulars" and "complete documentation" are *undefined* (*see* ECF No. 86 at 50), but the FDIC's own briefs show that it knows the difference between "undefined" and "ambiguous."  The FDIC specifically argued that other Bond terms are ambiguous (*see* ECF No. 86 at 45, 47, 52–55), but it never directed this sort of argument at the Proof of Loss clause.  Moreover, the FDIC itself claims that the existence of ambiguity is a question of law (*see* ECF No. 106 at 4), but it never asked this Court to declare the Proof of Loss clause ambiguous as a matter of law.  Rather, the FDIC used the lack of definition as a reason for *the jury* to decide in the FDIC's favor.  (ECF No. 86 at 50.)

Thus, the Court was never previously presented with a claim that "Proof of Loss, duly sworn to, with full particulars and complete documentation" was ambiguous.[2]

---

[2] The Motion for Reconsideration now argues that the Proof of Loss clause is ambiguous.  (*See* ECF No. 106 at 2–4.)  Having raised this argument for the first time after summary judgment, the Court need not consider it.  *See Combs v. PriceWaterhouse Coopers LLP*, 382 F.3d 1196, 1205 (10th Cir. 2004).  In any event, the Court sees no ambiguity.  As will be explained below, the question is not ambiguity but discretion.

Absent such an argument, the FDIC's position is evident: "Proof of Loss, duly sworn to, with full particulars and complete documentation" does not really require what its plain language appears to require, and the FDIC satisfied whatever lower standard this language actually permits.  The Court did not see, and still does not see, any basis in the Bond for such an interpretation.

The real thrust of the FDIC's argument, then and now, is a belief that the Bond grants too much discretion to KBS:

- ". . . none of the cases KBS cites support its argument that to satisfy the Bond's requirements, a proof of loss—standing alone and regardless of its timing in relation to relevant circumstances such as pendency of underlying litigation—must enable a KBS claims adjuster, exercising nothing more than his individual arbitrary judgment, to sit as judge and jury on all aspects of a claim."  (ECF No. 86 at 50 (citation omitted).)

- ". . . an insurer cannot use a bond's proof of loss requirement to erect an insurmountable technical obstacle to recovery: a proof of loss requirement must be reasonably construed and will not be construed as requiring the impossible."  (ECF No. 106 at 3.)

- ". . . the words 'proof of loss, duly sworn to, with full particulars and complete documentation' have no fixed and invariable meaning, and . . . the Bank's proof of loss not only substantially complied but also strictly complied under any fair and reasonable construction of the Bond's proof of loss requirements in this case, involving a claim stemming from third party litigation filed shortly before and unresolved when the Bank failed."

6

(ECF No. 110 at 2 (footnote omitted; emphasis removed).)

If these arguments have any relevance, it would be to a cause of action the FDIC has not pleaded, *i.e.*, a breach of the covenant of good faith and fair dealing. *See, e.g.*, *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) (explaining that the covenant of good faith and fair dealing applies "when the parties, at formation, defer a decision regarding performance terms of the contract[,] leaving one party with the power to set or control the terms of performance after formation" (internal quotation marks omitted)). But the FDIC has never mentioned the covenant of good faith and fair dealing, and in any event, if the FDIC could justify pleading such a claim at this late date, it would nonetheless fail on its merits.

The covenant of good faith and fair dealing "will not contradict terms or conditions for which a party has bargained." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). Condition 14 is one of the terms for which the parties bargained. Condition 14 explicitly cuts off recovery when KBS does not receive "Proof of Loss, duly sworn to, with full particulars and complete documentation" before FDIC takeover. The FDIC wants the Court to implicitly insert a proviso to the effect of, "unless the takeover occurs before the Bank had sufficient time to gather full particulars and complete documentation." But this is essentially the opposite of the bargain encapsulated in Condition 14, and therefore cannot support a good faith/fair dealing claim.

For all these reasons, the Court declines to reconsider its previous interpretation and application of the Proof of Loss clause.[3]

---

[3] In a footnote, the FDIC challenges one of KBS's allegations of material fact. (*See* ECF No. 106 at 5 n.3.) Specifically, KBS alleged: "[Bank general counsel Robert] Wiest admits that

The FDIC's remaining arguments (ECF No. 106 at 6–11), are either elaborations on arguments previously made, or are arguments that could have been made, in the FDIC's summary judgment response.  The Court declines to reconsider its Order on any of these bases.[4]

## III.  CONCLUSION

For the reasons stated above, the Motion for Reconsideration (ECF No. 106) is DENIED.

---

at the time he signed [one of the letters sent by the Bank to KBS], the Bank had not suffered a loss and had no idea what the nature of the loss would be, if there was one." (ECF No. 80 at 17, ¶ 113.)  The FDIC now claims that "KBS mischaracterized [Wiest's deposition] testimony." (ECF No. 106 at 5 n.3.)  To the extent the FDIC means this as a serious argument for reconsideration, the Court rejects it.  The FDIC's summary judgment response was its opportunity to challenge KBS's statements of material fact.  For this particular statement, the FDIC simply replied, "Admitted that Wiest so testified, but denied that the testimony has any impact on the [FDIC's] claims, for reasons stated in argument below."  (ECF No. 86 at 14.) Contrary to WJM Revised Practice Standard III.E.5, however, the FDIC cited nothing in support—not even an internal cross-reference to the "argument below" (and, in fact, Wiest's name nowhere appears in the "argument below").

[4] There is no merit to the FDIC's claim that it never before had an opportunity to argue that the Proof of Loss clause should be construed in favor of coverage.  (*See* ECF No. 106 at 7 & n.4.)  KBS explicitly argued that the construe-in-favor-of-coverage canon should not apply to the Bond, the FDIC contested KBS's position, and the Court ruled in favor of KBS.  (*See* ECF No. 80 at 24–25; ECF No. 86 at 10 n.1; ECF No. 103 at 13–14.)  The FDIC cannot now complain that it never received an opportunity to argue that *one specific portion* of the Bond (the Proof of Loss clause) should nonetheless be construed in favor of coverage.  Assuming the construe-in-favor-of-coverage canon can be selectively applied—a proposition for which the FDIC cites no authority—there is no excuse for not raising this previously as an additional counterargument to KBS's position.  *See Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 790–91 (10th Cir. 2013) (waiver encompasses failure to raise obvious rejoinders to an opposing party's arguments).  The FDIC also offers no support for its implied argument that banks purchasing multimillion dollar fidelity bonds are in essentially the same bargaining position as the average purchaser of auto or homeowner's insurance.

Dated this 17th day of August, 2015.

BY THE COURT:

_____
William J. Martinez
United States District Judge